Christopher R. Dryden, Esq. (SBN 234476)
cdryden@attorneygl.com
David K. Haber, Esq. (SBN 282693)
dhaber@attorneygl.com
GLOBAL LEGAL LAW FIRM
380 Stevens Avenue, Suite 311
Solana Beach, CA 92075
Telephone: (888) 846-8901
Facsimile: (888) 846-8902

Attorneys for Specially Appearing
Defendant PACIFIC INSOLVENCY
ALLIANCE, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| KRISTINA B. BILBAO, | Case No. 2:21-cv-07736 |
|---|---|
| Plaintiff, | Assigned for All Purposes To: Judge: George H. Wu Dept: 9D |
| vs. | |
| PACIFIC INSOLVENCY ALLIANCE, LLC, | **SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendant. | **[NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT]** |
| | Hearing Date: 02/07/2022 Time: 8:30 a.m. Courtroom: 9D |
| | Complaint filed: September 29, 2021 |

///

///

///

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on February 7, 2022 at 08:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of this Court, located at 350 West 1st Street, Los Angeles, CA 90012, Specially Appearing Defendant Pacific Insolvency Alliance, LLC ("Defendant"), by and through its attorneys, will move for an order to dismiss the First Amended Complaint filed by Plaintiff Kristina B. Bilboa.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 30, 2021.

Dated:  January 6, 2022                    GLOBAL LEGAL LAW FIRM


By:  */s/ Christopher R. Dryden*
Christopher R. Dryden, Esq.
David K. Haber, Esq.
Attorneys for Specially Appearing
Defendant PACIFIC
INSOLVENCY ALLIANCE

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT...................................................................7

II.     PROCEDURAL BACKGROUND .........................................................8

III.    FACTUAL BACKGROUND ..................................................................8

IV.     LEGAL STANDARDS .........................................................................11

V.      ARGUMENT ........................................................................................13

        Defendant is Not a Credit Repair Organization .................................13

        Defendant's Services Do Not Repair Credit ......................................15

        Defendant is a Debt Settlement Provider ...........................................19

        Plaintiff Failed to Allege the Required Elements Under CROA
            and CSA ........................................................................................21

        Plaintiff Failed to Allege Misleading or Untrue Representations
            Credit Repair Organizations Act...................................................21

            Violations of 15 U.S.C. § 1679 et seq...........................................22

                Violations of CROA § 1679b(a) are not Pled with
                    Particularity as Required by FRCP 9(b ...........................22

                Violation of CROA § 1679b(b) is Improperly Pled .................23

                Violation of CROA § 1679c Similarly Fails ...........................24

                Violation of CROA § 1679d(4) is Not Supported by
                    the Facts..........................................................................25

                Violation of CROA § 1679e(c) Fails.......................................25

            Violation of California Civil Code § 1789.10 et seq.
                Alleges No Supporting Facts......................................................25

                Plaintiff's Allegations Are Insufficient under the
                    CSA ..................................................................................26

VI.     CONCLUSION .....................................................................................28

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

i

TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)................................................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)...............................................12

*Berry v. Cook Motor Cars, Ltd.*, 2009 WL 1971391 ...................................................14

*Browning v. Yahoo!, Inc.*, Case No. C04-01463 HRL (N.D. Cal. Nov. 4, 2004)......................................................................................................................21, 23

*Casa Herrera Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345-346 ................................20

*Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009)...............................................................................................................12

*Dauval v. Preferred Collection & Mgmt. Servs., Inc.*, 2012 WL 5928622, at *4-5 (M.D.Fla. Nov. 26, 2012)....................................................18

*FTC v. Gill*, 265 F.3d 944, 956 (9th Cir. 2001)...........................................................14

*Giannaris v. Cheng*, 219 F.Supp.2d 687, 694 (D.Md. 2002) .....................................23

*In re Experian Info. Solutions, Inc.*, 2017 WL 3574847, at *4 (D. Ariz. Aug. 17, 2017).............................................................................................................15

*In re GlenFed, Inc. v. Securities Litig.*, 42 F.3d 1541, 1548 n. 7 (9th Cir. 1994)...................................................................................................................23

*Karakus v. Wells Fargo Bank,*, 941 F.Supp.2d 318, 338 (E.D.N.Y. Apr. 22, 2013)...............................................................................................................14

*Kielty v. Midland Credit Management, Inc.*, 2015 WL 400584..........................13, 18

*Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) ....................................................................................................12

*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 ................................................26

*Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n. 12 (9th Cir. 2012) .........................................................................................12

*Lopez v. ML # 3*, 607 F.Supp.2d 1310, 1314 (N.D. Fla. 2009) .................................14

*Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001 .......................................12

*Moret v. Select Portfolio Servicing, Inc.*, 2009 WL 1288062, at *3 (S.D. Fla. May 6, 2009) ....................................................................................15

*Neder v. United States*, 527 U.S. 1 (1999) ..................................................................21

*Oslan v. Collection Bureau of Hudson Valley,* 2001 WL 34355648 (E.D.Pa. Dec. 13, 2001)..............................................................................18

*Parker v. 1-800-Bar-None*, 2002 WL 215530 (N.D. Ill. 2002)..................................23

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

ii

TABLE OF AUTHORITIES

*Rautu v. U.S. Bank, N.A.*, 2013 WL 866480, at *6 (E.D. Mich. Mar. 7, 2013)................................................................................................ 15

*Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) .....................21, 23

*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167 ............................... 26

*Spencer v. Ariz. Premium Fin. Co., Inc.*, 2011 WL 4473178, at *4 (W.D.N.Y. Sept. 26, 2011) ..................................................................... 18

*St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ................... 12

*Stout v. FreeScore, LLC,* 743 F.3d 680 (9th Cir. 2014) ................. 13, 17, 19

*Twombly*, 550 U.S. at 555........................................................................... 13

*United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2001) .................... 21

*Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 201 (D. Conn. 2012) ................................................................................. 14

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ................................... 12

*Wright v. 21st Mortgage Corp.*, 2007 WL 1459475 (N.D. Ala. 2007) ...................... 14

**<u>Statutes</u>**

15 U.S.C. § 1679a(3) ................................................................................... 14

15 U.S.C. § 1679b(1-2).................................................................................. 7

15 U.S.C. § 1679b(a)(3)............................................................................... 23

15 U.S.C. § 1679b(a)(4)............................................................................... 21

Cal.Civ.Code § 1789.11(b) ............................................................................ 7

Cal.Civ.Code § 1789.13(g) .......................................................................... 23

Cal.Civ.Code § 1789.13(h) .......................................................................... 21

California Civil Code sections 1788.300 - 1788.307 .................................. 19

Civil Code, section 1856(a) ......................................................................... 20

Civil Code, section 1856(b) ......................................................................... 20

**<u>Other Authorities</u>**

Credit Repair Organizations Act ................................................................... 7

Section 1679b(a)(3) of the CROA.....................................................21, 22, 26

Section 1679b(a)(4) ................................................................................22, 26

Section 1789.13(g) of the CSA..............................................................22, 26

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(858) 846-9901

iii

**<u>Regulations</u>**

Section 1789.13 (g)-(h) of the CSA.................................................................25, 26

Section 1789.12 ...............................................................................................26

Rule 9(b) .........................................................................................................21

Rule 12(b)(6)..............................................................................................12, 21

Rule 12(b)(1)...................................................................................................12

Federal Rule of Civil Procedure 12(b)(1) .........................................................11

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

TABLE OF AUTHORITIES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

Plaintiff Kristina Bilbao's ("Plaintiff") First Amended Complaint ("FAC") alleges causes of action for violations of (1) 15 U.S.C. § 1679 et seq. i.e., the Credit Repair Organizations Act ("CROA"), and (2) California Civil Code § 1789.10 et seq. i.e., the California Credit Services Act ("CSA"). Both causes of action should be dismissed because Defendant, Pacific Insolvency Alliance, LLC ("Defendant") is not a "credit repair organization" as defined in and subject to either the CROA or CSA, and they have been insufficiently pled.

The CROA and CSA were enacted to insure that "prospective buyers…are provided with the information necessary to make an informed decision regarding the purchase of [credit repair organization] services."  15 U.S.C. § 1679b(1-2); also see Cal.Civ.Code § 1789.11(b). In contravention of this purpose, Plaintiff seeks to stretch the consumer protection language of these statutes to encompass Defendant's debt settlement services related to Plaintiff's unsecured debts.

Critically, Defendant never offered to repair Plaintiff's credit, and in fact advised Plaintiff that its services would likely harm her credit by paying less than the debt owed. Plaintiff even executed agreements with Defendant wherein she expressly agreed that Defendant would not repair her credit and that her credit score would be negatively impacted.

After Defendant filed its Motion to Dismiss Plaintiff's Complaint, Plaintiff filed the FAC attempting to cure the noted deficiencies but only made minimal changes which failed to cure those deficiencies. Plaintiff now claims, without evidence, that Defendant orally offered to improve her credit history. Plaintiff mistakenly believes that helping to settle debts makes Defendant a "credit repair organization." It does not.

Plaintiff's FAC should be dismissed with prejudice.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

## II.   PROCEDURAL BACKGROUND

On September 29, 2021, Plaintiff filed the Complaint.  Doc. No. 1.  On December 10, 2021, Defendant filed its Motion to Dismiss Plaintiff's Complaint. Doc. No. 13. On December 30, 2021, Plaintiff filed her First Amended Complaint. Doc. No. 16.

## III.   FACTUAL BACKGROUND

On April 27, 2019, Plaintiff entered the Debt Negotiations and Services Agreement ("Agreement") with Defendant. See Exhibit A to the Declaration of Ben Lou ("Lou Dec."). Defendant assists consumers with the negotiation and settlement of unsecured debts, not repairing credit. Id., p. 1. The Agreement provided for the following services only:

**Scope of Engagement and Services**

1. Review prior communications that you provide to the Company involving Approved Accounts for information that will assist Company in <u>negotiating Customer's [Bilbao] debt</u>;

2. Contact creditors of Approved Accounts ("Approved Creditor(s)" i.e., Bilbao's unsecured creditors) and directly communicate with them when necessary;

3. Notify Approved Creditors of the relationship between Company and Customer [Bilbao] and the services being provided;

4. Negotiate with Approved Creditors <u>to settle the Approved Accounts</u> on behalf of the Customer [Bilbao]; and,

5. Provide Customer [Bilbao] with feedback and updates regarding the status of all debt reduction efforts.

Company will assume that all Approved Accounts are valid and accurate as represented by the Customer [Bilbao]. <u>The Company's representation of you shall not include any services other than those described above</u>." (<u>Emphasis</u> added.)  Id., p. 2.

The Agreement also provided: "<u>The Company's services **shall not include undertaking any credit repair work**</u> for any Customer, including but not limited to

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1  any efforts to improve your credit record, credit history, or credit score or rating." Id.

2  **Service Fees**

3      "Customer [Bilbao] acknowledges that the Company has made no promises

4  limiting the total amount of fees incurred by Customer [Bilbao] under this Contract.

5  The total amount of fees will depend on how many months Customer [Bilbao] is in

6  Program and the amount of Customer's [Bilbao's] debt." Id., p. 3.

7      Defendant advised Plaintiff that it would recommend a program to help reduce

8  her debt, but it was also important to be aware of other debt relief options which may

9  include credit counseling, bankruptcy, or working with creditors.  Id., p. 3 "Program

10  Selection and Alternatives".

11      Defendant further advised Plaintiff that she was enrolled in a debt settlement

12  program, not a "credit repair program" as alleged in the FAC.

13  **Termination of the Company by the Customer**

14      The Agreement provides that Plaintiff "shall have the right to terminate the

15  Company's services at anytime."  Agreement, p. 8 "Termination of the Company by

16  the Customer." Thus, the FAC's allegation that the contract itself fails to include a

17  bold, conspicuous statement regarding Plaintiff's right to cancel her services is not

18  supported by the facts, an item conspicuously left absent by Plaintiff in both the

19  original Complaint and FAC.  FAC, ¶ 28. Moreover, the Agreement provides multiple

20  areas that alert Plaintiff that she could terminate the Agreement at any time. See

21  Agreement at page 1: **"If the terms and conditions are acceptable to you [Bilbao],**

22  **please sign this Contract indicating that you [Bilbao] are in complete agreement**

23  **with the Contract."**  (Emphasis **original**.)

24      Lastly, the Agreement provides a "Notice of Right of Rescission" on page 10.

25  This gave Plaintiff the right to cancel the Agreement within three business days from

26  the date of execution. This completely negates the FAC's allegations that there was a

27  violation of CROA § 1679d (4).

28  / / /

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(808) 846-6901

9

**No Promises or Warranties**

The Agreement expressly provides that Defendant made no promises, representations, or warranties with respect to the contract with Plaintiff, including any possible outcomes. Plaintiff also expressly acknowledged that she had the opportunity to seek the advice of independent legal counsel prior to executing the Agreement.

**Confirmation and Attestation of Meeting**

On April 27, 2019, Plaintiff executed a "Confirmation and Attestation of Meeting" with Defendant's representative Ms. Cathleen Clark. Lou Dec., ¶ 4, Exhibit B. Plaintiff requested an in-person meeting with Ms. Clark to review the documents and ask questions regarding Defendant's services. Plaintiff attested that she could not engage Defendant without an in-person meeting. Plaintiff expressly agreed that she understood that Defendant's debt mediation program was an estimate and subject to change. Id., Nos. 2, 7.

Plaintiff also agreed that by using Defendant's debt mediation program, it would have a negative impact on her credit because payments were not made monthly. Id., No. 2. Plaintiff also acknowledged that Defendant never advised her about when her credit would become usable or remedied, nor was a future credit score quoted to her. Id., No. 17. Plaintiff also acknowledged that the in-person meeting with Defendant's representative was thorough and complete, and the representative answered all of her questions. Id.

Thus, despite the FAC's claims, Defendant never represented in its advertisements, oral representations or written agreement that it would improve Plaintiff's credit history. In fact, the written agreement stated the exact opposite.

**Settlement of Plaintiff's Debts**

Despite the FAC's allegations, Defendant successfully negotiated settlement of Plaintiff's two debts with Capital One. On November 19, 2020, Defendant resolved an outstanding debt balance of $4,050.90, and settled it for $2,146.98. The same day, Defendant resolved another outstanding debt balance of $5,407.05, and settled it for

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(808) 846-6901

10

1   $2,865.74. Thus, Defendant resolved Plaintiff's outstanding debt of $9,457.95 to
2   Capital One for only $5,012.72, a savings of $4,445.23, nearly a 50% discount. Despite
3   these savings, Plaintiff is unhappy.

4         On June 19, 2021, Plaintiff telephoned Defendant's call center to discuss the
5   status of her outstanding debts. Defendant has a recording of this phone call to
6   memorialize the interaction should a dispute arise. Defendant informed Plaintiff that
7   her program was supposed to end in June 2022 (the original end date was April 2022
8   but Plaintiff skipped 2 monthly payments) and June 2022 is the same month that her
9   Capital One accounts would be paid off. Defendant advised Plaintiff that she did not
10  have enough savings to pay off her Chase and Barclay's debts, at which point Plaintiff
11  became upset and belligerent towards Defendant's agent.

12        Defendant advised that the contractual language provided that the program's
13  terms were estimates, and this conversation was also recorded. Plaintiff was advised
14  that because she had missed monthly payments, the program was extended to try to
15  resolve her outstanding debts.

16        Defendant never offered to repair Plaintiff's credit, despite the FAC's claims.

## IV.    LEGAL STANDARDS

18        Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action
19  for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter
20  jurisdiction can never be forfeited or waived and federal courts have a continuing
21  independent obligation to determine whether subject-matter jurisdiction exists.
22  *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n. 12 (9th Cir.
23  2012) (internal quotation marks and citations omitted). On a motion to dismiss for
24  lack of subject matter jurisdiction under Rule 12(b)(1), plaintiff has the burden to
25  establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC*
26  *v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

27        A party challenging the court's subject matter jurisdiction under Rule 12(b)(1)
28  may bring a facial challenge or a factual challenge. *White v. Lee*, 227 F.3d 1214,

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

11

1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *White, supra*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

Alternatively, under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678-680 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

1  "where the well-pleaded facts do not permit the court to infer more than the mere
2  possibility of misconduct." *Id.*

3      Courts "are not bound to accept as true a legal conclusion couched as a factual
4  allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

5  **V.   ARGUMENT**

6      **A.   Defendant is Not a Credit Repair Organization**

7      Defendant disputes that it is a Credit Repair Organization within the meaning of
8  the CROA. Section 1679b of the CROA prescribes certain practices by any "person"
9  or "credit repair organization"; similarly, Sections 1679c and 1679d mandate
10 disclosures and regulate contracts made by "credit repair organizations." *Kielty v.*
11 *Midland Credit Management, Inc.*, 2015 WL 400584, *3. Thus, to survive a motion to
12 dismiss, Plaintiff must plead facts sufficient to plausibly show that Defendant is such
13 an organization. *See, Stout v. FreeScore, LLC,* 743 F.3d 680 (9th Cir. 2014)
14 (determining whether a company is a credit repair organization is proper at the motion
15 to dismiss stage).

16     The CROA defines a "credit repair organization" as follows:

17     [A]ny person who uses any instrumentality of interstate commerce or the mails
18 to sell, provide, or perform (or represent that such person can or will sell, provide, or
19 perform) any service, in return for the payment of money or other valuate
20 consideration, for the express or implied purpose of: (i) improving any consumer's
21 credit record, credit history, or credit rating; or (ii) providing advice or assistance to
22 any consumer with regard to any activity or service described in clause (i)." 15 U.S.C.
23 § 1679a(3); *Stout v. FreeScore, LLC* (2014) 743 F.3d 680, 684-685.

24     To fall within the definition, a person need not actually attempt to improve a
25 consumer's credit record, history, or rating in order to meet the statutory definition.
26 Instead, an organization need only represent that it can or will provide these services.
27 *Id.* In interpreting a person's advertisements, the Court looks to the overall net
28 impression of the subject advertisement to determine what message a viewer may

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

13

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1  reasonably ascribe to it. *Id.* (citing *FTC v. Gill*, 265 F.3d 944, 956 (9th Cir. 2001)).

2      The Court must determine whether Section 1679b(a)(1) applies when an entity

3  is not a credit reporting organization. *See Wanamaker v. Westport Bd. of Educ.*, 899 F.

4  Supp. 2d 193, 201 (D. Conn. 2012). In *Wright v. 21st Mortgage Corp.*, 2007 WL

5  1459475 (N.D. Ala. 2007), the court concluded that when Congress enacted the

6  CROA, the focus was on the credit repair industry, not enacting a federal cause of

7  action creating liability for every person guilty of making defamatory statements about

8  a consumer's creditworthiness. *Id.* at *11. The court further noted that remedies for

9  such wrongs are adequately provided for under state tort laws, and courts cannot

10  assume Congress intended to add a federal question cause of action to the dockets of

11  federal courts without some mention of its reasons for doing so in the codified findings

12  and purposes or in the Act's legislative history. *Id.* As a result, liability under the

13  CROA is limited to credit repair organizations. *Id.*

14      A number of other district courts have reached the same conclusion. *See Lopez*

15  *v. ML # 3*, 607 F.Supp.2d 1310, 1314 (N.D. Fla. 2009) ("In sum, when the Act is

16  considered as a whole and in light of its explicitly stated purposes, it is clear that it

17  applies only in the credit-repair context.") *Berry v. Cook Motor Cars, Ltd.*, 2009 WL

18  1971391, at *2 ("This court agrees with the analysis in *In re Wright*."); *Karakus v.*

19  *Wells Fargo Bank,*, 941 F.Supp.2d 318, 338 (E.D.N.Y. Apr. 22, 2013) ("Although

20  some authority exists for the…proposition that 'no person' should be read broadly

21  enough to include mortgage lenders like Wells Fargo, this interpretation would run

22  afoul of the purposes the statute was designed to achieve."); *Moret v. Select Portfolio*

23  *Servicing, Inc.*, 2009 WL 1288062, at *3 (S.D. Fla. May 6, 2009) ("The Court agrees

24  with the Defendants that CROA was not intended to apply where no credit repair

25  organizations, as defined by the Act, was involved."); *Rautu v. U.S. Bank, N.A.*, 2013

26  WL 866480, at *6 (E.D. Mich. Mar. 7, 2013) (analyzing § 1679 in the context of the

27  statute as a whole and concluding that interpreting the Act as applicable to persons not

28  affiliated with credit repair organizations would expand the scope of the statute beyond

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

14

its stated purpose); *In re Experian Info. Solutions, Inc.*, 2017 WL 3574847, at *4 (D. Ariz. Aug. 17, 2017) ("[I]t is clear from the text and structure of the CROA that the 'persons' whose conduct the CROA regulates are credit repair organizations or persons associated with credit repair organizations.")

**B.    Defendant's Services Do Not Repair Credit**

Here, the Agreement clearly states that instead of repairing Plaintiff's credit, it will be negatively impacted:

**"(2) CREDIT RATING IMPACT**

While participating in a debt settlement program, **your credit score will be negatively impacted**. Your credit report may reflect the fact that you have stopped paying your creditors if you do so, or that you are currently enrolled in a debt settlement program. Furthermore, a debt settled for less than the full amount owed may result in a **negative notation on your credit report**. Please visit www.myfico.com for further information about credit ratings."

Plaintiff signed her initials acknowledging that Defendant's services would not "repair" her credit, and in fact would likely negatively impact her credit.

As outlined above, the Agreement clearly stated that Defendant's services "shall not include undertaking any credit repair work for any Customer [Bilbao], including but not limited to any efforts to improve your credit record, credit history, or credit score or rating." Agreement, Scope of Engagement and Services, No. 3.

Moreover, the Agreement clearly provides the following:

**"(4) CREDIT OR COLLECTION ACTIVITY**

While you are enrolled in a debt settlement program, late fees, penalties, and interest will continue to accrue on your debt until your creditor accepts a settlement offer and the settlement is completed as agreed. If you do not or cannot remit your monthly minimum payment, you will be in default of your agreement with your creditor(s), which may <u>result in an increased interest rate or other actions adverse to your interests</u>. If you do not or cannot pay your monthly minimums for one credit

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

account, that may impact or cause a default on your other credit accounts (Universal Default) subjecting you to <u>higher interest rates</u>, penalties, and other actions that may be available to your creditors.

Your creditors may reflect late fees, penalties, and additional interest on your monthly statements while you participate in a workout program until a settlement is finalized with your creditors. If negotiations are unsuccessful, you may be responsible for payment of the entire new balance. If negotiations fail, and you complete the terms of our guarantee, your total payout on all enrolled debts, subject to the terms and conditions of our guarantee, will be limited to the total amount of unsecured debt approved and enrolled into our program at time of enrollment.

Participating in a debt settlement program, like any failure to pay creditors on time, will likely increase collection activity, including increased phone calls and correspondence from the creditors or debt collectors. The Company will assist you to reduce such activity but it will not stop completely. If you choose to utilize a 3rd party program, like Veritas Legal Plans, options are available to you through those programs to assist you with these matters.

By failing to pay creditors in accordance with the terms of the contractual agreements with those creditors, you may be in violation of the agreements with those creditors, which may result in litigation. Once a judgment has been obtained, a creditor may garnish your wages or seize any available assets or property. State laws regarding judgments vary. Please consult an attorney practicing in your state regarding litigation and possible judgment consequences. Again, if you elect to utilize a 3rd party program, like Veritas Legal Plans, those programs will assist you in handling those matters."

Plaintiff signed her initials acknowledging that her credit would be negatively impacted, not "repaired." Importantly, Plaintiff also expressly acknowledged that Defendant's services would have a negative impact on her credit, and that Defendant made no representations about her credit or how her future credit score would be impacted. Lou Dec., ¶ 4.

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

1       The Ninth Circuit's decision in *Stout v. FreeScore, LLC*, 743 F.3d 680 (9th Cir.

2   2014), in which it found an online provider of credit scores, reports, and consumer

3   credit information to be a "credit repair organization," is instructive. See 743 F.3d at

4   681. In *Stout*, the provider, FreeScore, went beyond warning consumers about the harm

5   caused by a poor credit report, to charging them initial and monthly fees in return for

6   providing merged credit reports and alerting them to changes to their reports. *Id.* at

7   685-686. In reversing the district court, the Ninth Circuit reasoned that FreeScore's

8   online and television advertisements went beyond merely providing information about

9   one's credit to recommending a course of action to consumers. *Id.* at 686. In other

10  words, FreeScore represented both explicitly and implicitly that its services could

11  improve or assist in improving a consumer's credit record, history, or rating. *Id*. Thus,

12  the Ninth Circuit found that the overall net impression communicated by FreeScore

13  was that its services would improve consumer's credit. *Id*.

14      Unlike FreeScore, Defendant does not offer any service for the purpose of

15  providing assistance or advice to improve consumers' credit record in return for

16  payment. Defendant did not represent that its services could improve or assist in

17  improving Plaintiff's credit record, history, or rating. Defendant, as a debt settlement

18  company, is simply assisting the settlement of unsecured debts owed by Plaintiff and

19  acknowledges the benefits thereof.

20      Assisting the settlement of a debt for a compromised amount and utilizing the

21  potential to a lower credit score as motivation to encourage a person to pay the debt

22  **does not** make a person a credit repair organization. *See Kielty, supra*, 2015 WL

23  400584, at *4. *See also, Spencer v. Ariz. Premium Fin. Co., Inc.*, 2011 WL 4473178,

24  at *4 (W.D.N.Y. Sept. 26, 2011); *Dauval v. Preferred Collection & Mgmt. Servs., Inc.*,

25  2012 WL 5928622, at *4-5 (M.D.Fla. Nov. 26, 2012) (holding that a debt collector

26  seeking to collect a debt and offering to restore the debtor's credit in exchange for

27  payment on the debt was not a credit repair organization).

28      In *Dauval*, the defendant Preferred Collection & Management Services, Inc.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

("Preferred") sent a letter to Joseph Pietro that referenced a $350.00 debt owed. Preferred conceded that it had no understanding of Pietro's credit rating and had no ability to quantify the impact of payment on Pietro's credit rating. *Id*. at *1. The court found that the critical issue was whether Preferred met the element of a credit repair organization by providing service for the purpose of improving Pietro's credit rating. *Id*. at *4. The court found that Preferred was not a "credit repair organization" as defined in § 1679a. *Id*. The evidence demonstrated that there was no dispute that Preferred sought only to collect the $350.00 outstanding debt from Pietro, and never offered to perform any services related to his credit record, credit history, or credit rating. *Id*.

Similarly, in *Oslan v. Collection Bureau of Hudson Valley,* 2001 WL 34355648 (E.D.Pa. Dec. 13, 2001), the court found that the defendant was not a "credit repair organization" because collection agencies do not seek compensation for credit repair services when collecting debt.

Here, any benefit to Plaintiff's credit score would simply be an indirect, collateral effect to the settlement of her debt. The FAC alleges that Defendant was merely seeking repayment of Plaintiff's debts owed to her creditors, or a potentially lessor amount if it could work out a plan with Plaintiff's creditors. FAC, ¶ 10.

Defendant is neither a credit repair organization nor a credit services organization. Viewing the record in the light most favorable to Plaintiff, Defendant's advice to Plaintiff focused on stopping creditors from calling her and trying to settle her unsecured debts for a compromised amount, not on improving Plaintiff's credit record, credit history, or credit rating, or about obtaining an extension of credit. Indeed, Plaintiff executed an Agreement and Confirmation clearly stating that Defendant did not make any representations regarding improving Plaintiff's credit record, history or rating and did not counsel her on any issues relating to credit repair. Lou Dec., ¶¶ 3-4. *See Stout, supra*, 743 F.3d at 685 (9th Cir. 2014) (reasoning that courts must look to the overall net impression of an entity's communications with a consumer to determine

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

whether the consumer could reasonably ascribe to it a message of improving her credit record, history, or rating for the purpose of a CROA claim). Plaintiff has not clearly articulated the basis for her CROA argument or identified evidence in support of it. Thus there is no federal question and, therefore, no subject matter jurisdiction.

For these reasons, the Court should grant Defendant's motion to dismiss Plaintiff's FAC without leave to amend.

### C.     Defendant is a Debt Settlement Provider

California Civil Code sections 1788.300 - 1788.307 define a "debt settlement provider" and provide requirements and prohibitions related to debt settlement services.

"Debt settlement provider" means a person who, for compensation and on behalf of a consumer, provides debt settlement services. Civil Code, section 1788.301. "Debt settlement services" means any of the following:

(1) Providing advice, or offering to act or acting as an intermediary, including but not limited to, offering debt negotiation, debt reduction, or debt relief services between a consumer and one or more of the consumer's creditors, if the primary purpose of that advice or action is to obtain a settlement for less than the full amount of the debt.

(2) Advising, encouraging, or counseling a consumer to accumulate funds in an account for future payment of a reduced amount of debt to one or more of the consumer's creditors. Id.

Defendant is a company who, for compensation and on behalf of Plaintiff, provides debt settlement services. Defendant offered to act as an intermediary to negotiate Plaintiff's debts for the primary purpose to obtain a settlement for less than the full amount of Plaintiff's debt. Defendant negotiated with Plaintiff's debts with Capital One, obtaining Plaintiff a 50% discount on her debt. As the FAC admits, Defendant advised, encouraged, and counseled Plaintiff to accumulate funds in an account for future payment of a reduced amount of debt to one or more of her creditors.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

1  FAC, ¶ 16.

2      Thus, Defendant meets the definition of "debt settlement provider", and is not a

3  "credit repair organization", despite Plaintiff's claims. Moreover, the FAC's claims

4  regarding oral representations to Plaintiff about improving her credit history should be

5  disregarded because of the parole evidence rule.

6      Under the parole evidence rule, the terms set forth in a writing intended by the

7  parties as a final expression of their agreement with respect to such terms as are

8  included therein may not be contradicted by evidence of any prior agreement or of a

9  contemporaneous oral agreement. Civil Code, section 1856(a). If the writing is

10  intended as a complete and exclusive statement of the terms of the agreement, the

11  terms may not be explained or supplemented. Civil Code, section 1856(b). The

12  reasoning is that the parole evidence rule does not merely serve an evidentiary purpose.

13  It also determines the enforceable and incontrovertible terms of an integrated written

14  agreement. *Casa Herrera Inc. v. Beydoun* (2004) 32 Cal.4th 336, 345-346.

15      While the parole evidence rule does not exclude the use of extrinsic evidence to

16  establish illegality or fraud, this exception does not extend to promissory fraud claims

17  premised on prior or contemporaneous statements at variance with the terms of a

18  written integrated agreement. *Id.* at 346.

19      Here, Plaintiff is trying to rescue her claims by falsely claiming Defendant's

20  agent orally told her that Defendant's services would settle her debts and improve her

21  credit. FAC, ¶¶ 9,13, 36. However, the Agreement Plaintiff executed expressly stated

22  that Defendant did not offer credit repair services, and instead would likely harm

23  Plaintiff's credit. The FAC's false claims of oral representations, which were made

24  only after Defendant filed its Motion to Dismiss Plaintiff's Complaint, are self-serving

25  and should be disregarded.

26  **D.    Plaintiff Failed to Allege the Required Elements Under CROA and**

27  **CSA**

28      Assuming, *arguendo*, that the Court deems Defendant to be a credit repair

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

20

organization under the CROA and/or CSA, Plaintiff failed to plead elements of common law fraud, such as intent, reliance, and damages, necessary to survive dismissal of her claims under 15 U.S.C. § 1679b(a)(4) and Cal.Civ.Code § 1789.13(h). The use of the term "fraud" in the CROA and CSA establishes that Plaintiff must allege these required elements to survive a motion to dismiss under Rule 12(b)(6). *See United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2001) (quoting *Neder v. United States*, 527 U.S. 1 (1999)) (where Congress uses terms such as "fraud" that have accumulated "settled meaning" under the common law, a court must infer, unless the statute dictates otherwise, that Congress meant to incorporate the established meaning of those terms.)

Under Rule 9(b), claims brought under either section must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud (or mistake) …so that they can defend against the charges and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Browning v. Yahoo!, Inc.*, Case No. C04-01463 HRL (N.D. Cal. Nov. 4, 2004).

Because the FAC contains no allegations that set out these elements, these claims must be dismissed pursuant to Rule 12(b)(6).

**E.** **Plaintiff Failed to Allege Misleading or Untrue Representations**

**Credit Repair Organizations Act**

Section 1679b(a)(3) of the CROA provides that no person may make or use any untrue or misleading representation of the services of the credit repair organization. To bring a claim under this section, a plaintiff must allege "untrue or misleading representations" concerning the services of the credit repair organization.

Section 1679b(a)(4) has a slightly different concern and provides that no person may engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

With respect to Plaintiff's allegations of misleading representations, Plaintiff failed to allege a representation at all. A failure to make a representation is, by definition, not a representation at all and cannot violate Section 1679b(a)(3) of the CROA or Section 1789.13(g) of the CSA. Plaintiff cannot evade the clear text of these statutes which require her to allege (1) a representation, and (2) an explanation of why that representation is "misleading" in order to state a claim for relief. Her failure to allege these necessary elements of her claims requires dismissal of these claims.

Plaintiff has reached too far - her allegations under the CROA and/or CSA do not allege fraudulent acts or misleading representations with the particularity required by FRCP 9(b). Nor does the FAC allege the basic elements of her claims sufficiently to state a claim under Rule 8(a). Even taking all of the allegations in the FAC as true, Plaintiff has succeeded in alleging only one thing: that she received and used the services that she paid Defendant for. Because Plaintiff failed to allege with specificity any fraudulent acts or misleading representations, her claims under the CROA and/or CSA must be dismissed pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted.

**1.    Violations of 15 U.S.C. § 1679 et seq.**

      **a.    Violations of CROA § 1679b(a) are not Pled with Particularity as Required by FRCP 9(b)**

Plaintiff claims in a conclusory manner, without any allegation of particular specific fact, that Defendant made untrue or misleading representations about the specific amount and length of time for Plaintiff's monthly payments. In *Browning v. Yahoo!, Inc.*, Case No. C04-01463 HRL (N.D. Cal. Nov. 4, 2004), the court expressly applied Rule 9(b) to dismiss claims brought under 15 U.S.C. § 1679b(a)(3) for failure to plead untrue or misleading representations with particularity. *See also Parker v. 1-800-Bar-None*, 2002 WL 215530 (N.D. Ill. 2002) (evaluating plaintiff's claims under both Sections 1679b(a)(3) and (4) under Rule 9(b).) Indeed, Rule 9(b) is designed for precisely these types of claims. *See, e.g., Giannaris v. Cheng*, 219 F.Supp.2d 687, 694

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

(D.Md. 2002) (allegations of fraud or misrepresentation must be pled with particularity).

Plaintiff's allegations also obfuscate the express terms of the Agreement:

"The total amount of fees will depend on how many months Customer [Bilbao] is in Program and the amount of Customer's [Bilbao's] debt." Agreement, p. 3, "Service Fees". The allegations are conclusory and do not accurately reflect the express terms of the Agreement executed by Plaintiff. Thus, this allegation must be dismissed.

Plaintiff's allegations under 15 U.S.C. § 1679b(a)(3) are not pled with the particularity required by Rule 9(b). Her failure to identify the time, place, persons, [and] statements made, [and an] explanation of why or how such statements are false or misleading is fatal to her claims under both 15 U.S.C. § 1679b(a)(3) and Cal.Civ.Code § 1789.13(g). *In re GlenFed, Inc. v. Securities Litig.*, 42 F.3d 1541, 1548 n. 7 (9th Cir. 1994) (superseded by statute on other grounds).

### b.    Violation of CROA § 1679b(b) is Improperly Pled

Plaintiff generally alleges that Defendant violated provisions of the CROA related to charging fees up front. Although Rule 9(b) clearly requires that each allegation related to a CROA violation be pled with particularity, Plaintiff makes broad and generalized assertions without reference to any specific allegations in the FAC. But Rule 9(b) requires specificity with respect to each allegation. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (allegations must give a defendant notice of the particular misconduct at issue). Repetition of the elements required by the Rule coupled with conclusory assertions that the FAC alleges is insufficient to fulfill the requirements of Rule 9(b).

///
///
///
///

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

Moreover, the Federal Trade Commission ("FTC") amended the Telemarketing Sales Rule ("TSR") in 2015. The legislation gives the FTC tools to enforce telemarketing and added additional protections to consumers.[1] Importantly, the FTC rule that regulates debt relief providers is included in the FTC's "Telemarketing Sales Rule" ("TSR"). There is an express exemption in the rule for sales that are conducted on a face-to-face or in-person basis. If a consumer met with a company representative prior to engaging the agreement, the no-advance fee portion of the rule does not apply.

As noted above, on April 27, 2019, Plaintiff executed the "Confirmation and Attestation of Meeting." Here, there is no dispute that Plaintiff met in-person with Defendant's representative Ms. Clark. Thus, Defendant was entitled to the advance fee portion as outlined in the Agreement. Accordingly, this allegation must be dismissed.

### c.   Violation of CROA § 1679c Similarly Fails

The FAC further alleges that Defendant failed to provide the written disclosures in a separate statement yet fails to comprehend that Defendant provided Plaintiff with more than the required disclosures in addition to the written Agreement. See Lou Dec., Exhibits A and B. Defendant also has multiple telephone recordings of Plaintiff wherein she acknowledged the requirements of Defendant's program and accepted them orally in agreeing to execute the Agreement.

As with the above, this must be dismissed.

### d.   Violation of CROA § 1679d(4) is Not Supported by the Facts

Plaintiff's allegation that there was no conspicuous statement with notice that Plaintiff could cancel is not supported by the facts. In particular, the Agreement provided a "Notice of Right of Rescission" on page 10 that states Plaintiff "may CANCEL this transaction without any Penalty or Obligation within THREE BUSINESS DAYS from the above date."

The Notice further provides:

---

[1] https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1 "**DO NOT SIGN THIS PAGE IF YOU DO NOT WISH TO CANCEL**" in bold.

2 Importantly, Plaintiff did not sign the page indicating that she wanted to cancel the

3 Agreement. Plaintiff clearly did not want to cancel the Agreement because she did not

4 sign it.  The facts show that she still has not canceled the Agreement, despite the FAC.

5 The Notice also states that each of the undersigned customers received two

6 copies of the Agreement and at least one copy of the Disclosure Statement.

7 Thus, this cause of action must be dismissed.

8 **e.      Violation of CROA § 1679e(c) Fails**

9 The FAC alleges that Defendant did not provide a completed copy of the

10 Agreement and other documentation but those allegations are not supported by the

11 facts either, as outlined amply above. The Agreement expressly stated that Plaintiff

12 was given at least two copies of the Agreement and one copy of the Disclosure

13 Statement.

14 Thus, this allegation must also be dismissed.

15 **2.      Violation of California Civil Code § 1789.10 et seq. Alleges No**

16 **Supporting Facts**

17 The California Credit Services Act ("CSA") is similar to the CROA, but not

18 identical.

19 Section 1789.13 (g)-(h) of the CSA provides that:

20 A credit services organization, and its salespersons, agents, representatives, and

21 independent contractors who sell or attempt to sell the services of a credit services

22 organization, shall not do any of the following:

23 (g) Make or use any untrue or misleading representations in the offer or sale of

24 the services of a credit services organization, including either of the following:

25 (1) Guaranteeing or otherwise stating that the organization is able to delete an

26 adverse credit history, unless the representation clearly discloses, in a manner equally

27 as conspicuous as the guarantee, that this can be done only if the credit history is

28 inaccurate or obsolete and is not claimed to be accurate by the creditor who submitted

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

25

the information.

(2) Guaranteeing or otherwise stating that the organization is able to obtain an extension of credit, regardless of the buyer's previous credit problems or credit history, unless the representation clearly discloses, in a manner equally as conspicuous as the guarantee, the eligibility requirements for obtaining an extension of credit.

(h) Engage, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization.

Like the CROA, allegations under the CSA sound in fraud and California law requires that such allegations be pled with particularity. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167. Section 1789.13, subsection (h) of the CSA is identical to Section 1679b(a)(4) of the CROA. Like Section 1679(a)(3) of the CROA, Section 1789.13, subsection (g) of the CSA regulates "misleading representations," however, subsection (g) contains additional qualifications to its language; because of these qualifications, subsection (g) regulates a narrower class of "misleading representations" than the CROA.

### a.     Plaintiff's Allegations Are Insufficient under the CSA

As with the above, the FAC contains conclusory allegations that Defendant violated the CSA yet fails to provide any facts to support those allegations.

Section 1789.12 provides that a "credit services organization" means a person who represents that he or she can or will sell, provide or perform, the following services for payment of money or other valuable consideration: (1) improving a buyer's credit record, history, or rating; (2) obtaining a loan or other extension of credit for a buyer; (3) providing advice or assistance to a buyer with regard to either paragraph (1) or (2).

As with the above, Defendant disputes that it is a "credit services organization" within the meaning of the statute. Instead, Defendant services were limited to negotiating and settling Plaintiff's unsecured debts. The Agreement expressly stated

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(808) 846-6901

1    that Defendant's services "shall not include undertaking any credit repair work for any
2    Customer, including but not limited to any efforts to improve [Plaintiff's] credit record,
3    credit history, or credit score or rating."  Agreement, p. 2 "Scope of Engagement and
4    Services".

5          The FAC states a laundry list of alleged violations that are not supported by
6    facts.  For example, Defendant is allowed to receive Plaintiff's fees up front because
7    it's representative Ms. Clark met with Plaintiff in-person before she executed the
8    Agreement. Businesses like Defendant that meet their customers face-to-face before
9    signing them up for services are exempt from the TSR requirements.

10         There are no factual allegations that Defendant failed to perform the agreed
11   services within six months following the execution of the Agreement. Nor are there
12   any factual allegations that Defendant made any untrue or misleading statements to
13   Plaintiff, as the Agreement expressly stated that the "total amount of fees will depend
14   on how many months Customer [Bilbao] is in Program and the amount of Customer's
15   [Bilbao's] debt."  Agreement, p. 3 "Service Fees". The Agreement contained more
16   than the required disclosures, and Defendant provided at least two copies of the
17   Agreement to Plaintiff. Lastly, the Agreement had a very conspicuous "Notice of Right
18   of Rescission" with the statutorily required statements and notifications.

19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

# VI.   CONCLUSION

For the reasons outlined above, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice because Defendant is not a credit repair organization under the CROA and there is therefore no federal question at issue. Since both the Plaintiff and Defendant are both domiciled in California complete diversity is absent and without a federal question this Court does not have subject matter jurisdiction over Plaintiff's claims, if any. In addition, each of Plaintiff's claims fails to identify with particularity the who, what, where, when, and how the claimed fraud took place as required by Rule 9(b). She has failed to allege even the most basic components of a cognizable claim as required by Rule 12(b)(6). Because Plaintiff failed to plead her claims with the particularity required under the CROA and/or CSA, her fraud allegations under 15 U.S.C. § 1679 and Cal. Civ. Code §§ 1789 et seq. should be dismissed.

Dated:  January 6, 2022                    GLOBAL LEGAL LAW FIRM


By:  */s/ Christopher R. Dryden*
Christopher R. Dryden
David K. Haber
Attorneys for Specially Appearing
Defendant PACIFIC
INSOLVENCY ALLIANCE, LLC

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-6901

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2022, I caused to be electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the court rules.

Dated:  January 6, 2022                    GLOBAL LEGAL LAW FIRM


                                           By:  */s/ Christopher R. Dryden*
                                                Christopher R. Dryden
                                                David K. Haber
                                                Attorneys for Specially Appearing
                                                Defendant PACIFIC
                                                INSOLVENCY ALLIANCE, LLC

SPECIALLY APPEARING DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES